# SMITH *v.* GEORGIA RAILROAD & BANKING COMPANY.

1. Where one who had suffered a personal injury on a railroad received from the agent of the companies operating such road $1,750 in settlement, and gave to him a receipt and contract discharging and releasing the original company and its lessees from all claims for damages of every kind, nature, and character, growing out of or incident to such injury, such person could not afterwards repudiate or rescind the contract by alleging that, when the agent obtained it, he agreed that at the time of delivering it to the lessee companies he would obtain from them a writing stating that, if the injuries of the plaintiff proved more than of a merely trivial character, an additional amount in accordance with said injuries would be paid, and that the agent transmitted the receipt and acquittance, but did not obtain the additional paper as he had promised to do.

2. A parol promise to add terms to a complete written contract is different from an agreement not to deliver a paper except upon the happening of some event; and this case differs from those of *Hansford* v. *Freeman*, 99 *Ga.* 376, and *Moore* v. *Farmers' Mutual Ins. Asso.*, 107 *Ga.* 199.

3. While the petition contains certain allegations touching the unfitness of the plaintiff to transact business when she made a contract of settlement on account of personal injuries which she had received, yet, taken as a whole, the allegations show that she understood the situation and the instrument which she was signing, and that she negotiated in parol for an additional stipulation to be afterwards made.

4. Where the petition discloses that the real cause of complaint was because of an alleged parol promise to supplement a complete written contract, it will not be saved from a demurrer by reason of the allegations in regard to the plaintiff's condition arising from the injury and the

medicines administered to alleviate pain, or the insistence of the agent of the railroad company in effecting a settlement.

Argued May 25,—Decided October 14, 1908.

Action for damages. Before Judge Lewis. Taliaferro superior court. August 27, 1907.

Lola Lou Smith. brought suit against the Georgia Railroad & Banking Company, alleging, in brief, as follows: On June 10th, 1905, she was a passenger on the railroad of the defendant. The train was composed partly of passenger-cars and partly of freight-cars. A car in front of the one occupied by her and other passengers was loaded with flour beyond its capacity and safety. It was also old and of defective and worn material. A part of this car broke, obstructing the track and violently stopping the cars following it. The passengers were thrown from their seats, and the plaintiff was severely injured, causing pain and suffering and also pecuniary loss, which was set out. The effect of the injury was such as to prostrate her for weeks after the accident. It was necessary to administer opiates and anodynes to her to alleviate the pain. The effect of all this was to totally unfit her for the transaction of any business. While she was thus situated, she was approached by the agent of the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad company, lessees of the defendant company, to settle and arrange her claim for damages. She suggested delay, but he continued to visit her and to insist on a settlement, stating that it was merely temporary and to pay her for a temporary injury, and, if her injury proved permanent or of a severer nature than was known to her, the payment would be supplemented by the company, and this settlement would not prevent such a course or demand; and that he would at once go to Augusta and get the authorities of the lessees to make such an agreement when he delivered her receipt. He did not go to Augusta, but delivered her receipt without obtaining such agreement. She received $1,750 and gave the lessees a receipt for her claim. "She claims that this was a fraud upon her, and should not prevent her making a freer and reasonable recovery in this suit, and shows that her gross damages by the negligence of said company are $10,000.00, and she prays a judgment for said sum less the $1,750.00." Before filing suit

she tendered to the lessees the $1750 which she had received, with interest, but it was refused. The agent of the company who ap-. proached her for a settlement was notified by her nurses and attendants that she was not in a mental and physical condition to attend to any business, but he insisted on an interview or settlement. He stated to her that when he delivered this receipt to the authorities of the lessee companies he would at the same time obtain from them a writing in which it would be stated by them that, if the injuries of plaintiff proved more than of a merely trivial character, an additional amount in accordance with said injuries would be paid to her. He said that he would not send the agreement by mail, but that he would carry it in person to the authorities, and have them, when he delivered the receipt, give in return a writing to the effect of his agreement. She was induced by said agreement upon the part of the agent "to give him said receipt to transmit to said lessee companies, to rely upon his return to her of the agreement in writing he was to get from said companies. Plaintiff claims and avers that when said agent undertook, as herein set forth, that the said receipt by its terms and the terms of the agreement was not to be delivered without first obtaining the written agreement from said companies, which he undertook to obtain for her, and hence the delivery of the same was not proper or efficacious. . . She claims and avers that under said circumstances and also the promise of said agent, who told her that he came to her not only as the agent of said company but as her friend, it would be unjust and unfair to hold her to said receipt."

The release signed by the plaintiff was as follows: "$1,750.00. Atlanta, Ga., July 18th, 1905. Received of Georgia Railroad (under which style the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, as lessees, operate the Georgia Railroad and Banking Company), through W. L. Kendrick, its agent, the sum of Seventeen Hundred and Fifty Dollars ($1,750) ; and in consideration of said sum, I hereby acquit, discharge, and release the said Georgia Railroad and Banking Company, the Louisville and Nashville Railroad Company, and the Atlantic Coast Line Railroad Company for all claims for damages of every kind, nature, and character, growing out or incident to personal injuries sustained by me while a passenger of said Georgia Railroad on its Washington Branch, between the stations

of Barnett and Sharon, in the derailment of the train known as No. 43, June 10, 1905." (Signed.)

The defendant demurred generally to the petition. The demurrer was sustained, and the plaintiff excepted.

*Frank H. Colley* and *John A. Beazley,* for plaintiff.

*Joseph B. & Bryan Cumming, Park & Park,* and *Hawes Cloud,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) 1, 2. It is a familiar rule that pleadings are to be construed most strongly against the pleader. In one portion of the petition there is a somewhat vague reference in regard to "when said agent undertook, as herein set forth, that the said receipt by its terms and the terms of the agreement was not to be delivered without first obtaining the written agreement from said companies, which he undertook to obtain for her, and hence the delivery of same was not proper or efficacious." But this is not a direct allegation that the relinquishment was not to be delivered except upon a condition. The expression, "when said agent undertook, as herein set forth," etc., makes this entire statement depend on what had been set forth "herein;" and nowhere in the petition was it alleged distinctly that the delivery of the release, or its taking effect, was made conditional upon the obtaining of the counter-agreement. There is a clear distinction between giving to a person a paper to be delivered to another upon the fulfilment of some condition, and not otherwise, and the making of a written agreement, with a parol promise to give a counter-agreement changing or modifying its plain terms. In the one case, the theory is that the agreement has never been delivered in the legal sense. In the other it has been consummated, but with a parol agreement for the adding of other terms to the contract. An agreement of the latter character violates the rule against changing or supplementing a written agreement, which is complete on its face, by parol evidence. The plaintiff did not allege that the relinquishment was entrusted to the agent to be delivered only in the event of the making and returning to her of an additional written agreement from the other parties, or that if they declined to make such an agreement the relinquishment was not to be delivered at all, or was to be returned to her. The contract was complete on its face, and was a relinquishment on account of all damages sustained by her. She

received a consideration and delivered the paper. She did not allege that she received $1750 upon condition that it should be returned if the other parties did not give her a counter-agreement. Apparently she received that sum of money absolutely, and gave to the agent the contract of release. The money was hers, and the relinquishment was to be "transmitted" to the other parties, and was delivered to their agent. Construing the petition under the rule to which reference has been made above, there was a complete payment and relinquishment, but the agent of the other parties agreed to get them, when he delivered the release to them, to give her another writing, the effect of which would be to practically annul the relinquishment contained in the instrument signed by her. A petition setting forth such facts was demurrable. Moreover, there was no direct statement that the agent was acting for both sides in regard to the delivery of the receipt or release. He approached her as the agent of the adverse parties, for the purpose of making a settlement with her; and while he said he was her "friend," he was the agent of the other parties, and evidently dealt with her as such. What has been said readily distinguishes this case from *Hansford* v. *Freeman,* 99 *Ga.* 376 (27 S. E. 706), and *Moore* v. *Farmers' Mutual Ins. Asso.,* 107 *Ga.* 199 (33 S. E. 65), and similar cases.

3, 4. The allegations of the petition are insufficient to show a case of fraud or incapacity to contract, which would authorize the setting aside of the written agreement. It is alleged, that the plaintiff was prostrated by the injury; that it was necessary to administer opiates and anodynes to her to alleviate the pain; that "the effect of all this was to totally unfit her for the transaction of any business;" and that she proposed to delay the settlement, but the agent of the lessees of the defendant urged it. Had the petition stopped with reliance upon a fraudulent taking advantage of her condition, with sufficient allegations of fact as to the fraud or incapacity to contract, there would have been more merit in the effort to set aside the contract. But, when taken as a whole, it is evident that the real trouble is not on account of incapacity on the part of the plaintiff to contract, but because she contends that the agent of the other parties did not comply with a verbal promise made by him in connection with the contract. So far from showing a mental and physical inability to make a trade, if she could

enforce the parol promise alleged to have been made to her by the agent, she would have received $1750 and have given a receipt and relinquishment specifying · that "I hereby acquit, discharge, and release the said Georgia Railroad and Banking Company, the Louisville and Nashville Railroad Company, and the Atlantic Coast Line Railroad Company for all claims for damages of every kind, nature, and character growing out or incident to personal injuries sustained by me," and yet she would have an. agreement in return which would practically nullify the relinquishment of "all claims for damages," and make the payment of $1,750 only for "trivial" damages, leaving her to get as much more as she could if her injuries proved more than trivial or temporary. Such a trade would certainly indicate no mental incapacity.. There is no denial that she knew the contents of the paper signed by her, and understood that on its face it was a complete relinquishment of her claims, or that she was receiving $1,750 when she signed it. According to her petition, the real trouble was that she made a complete written contract, and now claims to supplement it with a parol promise on the part of the agent of the other parties. · Taken as a whole, the petition sets out no such case of incapacity to contract or fraud as would authorize the setting aside of the agreement.

*Judgment affirmed. All the Justices concur, except Holden, J., disqualified.*